**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

John Doe,

      Plaintiff,

      v.

Board of Education of
Columbus City Schools, *et al.*,

      Defendants.

Case No. 2:23-cv-1006

Judge Michael H. Watson

Magistrate Judge Vascura

## OPINION AND ORDER

Elementary school principals have a special responsibility to protect the children committed to their care. *Yates v. Mansfield Bd. of Edn.*, 808 N.E.2d 861, 870–71 (Ohio 2004). That special responsibility requires a principal to do something if they learn that a teacher at their school might be sexually grooming a student. *See id.*; Ohio Rev. Code § 2151.421; *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 260 (6th Cir. 2000). Although both federal and state law generally recognize this special responsibility, neither specifies exactly what the principal must do. *See, e.g.*, *Vance*, 231 F.3d at 261. But, safe to say, at a minimum, principals should appreciate the potential danger that the accused teacher poses to all students, assess the extent of that danger, and try to eliminate it. *See, e.g.*, *Yates*, 808 N.E.2d at 870–71.

None of that happened in this teacher-student sexual abuse case. A mother complained to Clinton Elementary School principal Carmen Graff that Clinton Elementary teacher Patrick Coughenour had been texting her 12-year-old

son excessively—sometimes late at night and sometimes sexually suggestive messages.  Granted, Graff did something in response: she told Coughenour to stop texting *that* boy.  But that is all Graff did.  And it was not enough.  Not long after, Coughenour began aggressively grooming a different student, Plaintiff John Doe.  Coughenour's harassment of Doe culminated in a criminal sexual assault.  *State v. Coughenour*, Case No. 20 CR 005813 (C.P. Franklin).

Because a reasonable jury could conclude that Graff flouted her responsibility to protect Doe by failing to investigate (or otherwise discipline) Coughenour, despite prior evidence that he was grooming another student, Doe's Title IX and state-law claims survive summary judgment.

## I.  FACTUAL BACKGROUND

### A.  The Board employed Doe's assailant, and Graff supervised him.

Defendant Board of Education of Columbus City Schools ("the Board") oversees an Ohio public school district.  Answer, ECF No 8 at PAGEID # 32.

John Doe was a Columbus City Schools student.  ECF No. 29 at PAGEID # 362–64.  He attended Clinton Elementary for second through fifth grade, Dominion Middle for sixth through eighth grade, and Alternative High for (at least) ninth and tenth grade.  *Id.*

Doe's assailant, Coughenour, was a Columbus City Schools instructor.  ECF No. 25 at PAGEID # 104.  The Board employed him from 2011 until 2020, for most of that time as a special education instructional aide at Clinton Elementary.  ECF No. 29 at PAGEID # 385.

Graff was also a Columbus City Schools employee. The Board employed her as the principal at Clinton Elementary from 2015 until her retirement in 2018. ECF No. 25 at PAGEID # 89–90, 100, 133. Although she never overlapped with Doe, she supervised Coughenour for her entire tenure. *Id.* at PAGEID # 126, 132. As principal, she had the power to discipline Clinton staff. *Id.* at PAGEID # 91; *see also* ECF No. 27 at PAGEID # 249–50.

So did three other Board employees involved here: Danny Graves, Julie Pfeiffer, and Victoria Frye. Graves was an executive director. ECF No. 27 at PAGEID # 245. In that role, Graves supervised a group of principals, including Graff. *Id.*; *see also* ECF No. 25 at PAGEID # 93. Pfeiffer was the Board's Director of Employee Relations. ECF No. 26 at PAGEID # 192. In that role, Pfeiffer's primary responsibility was to manage the discipline and discharge of Board employees. *Id.* Frye was the Director of Diversity, Equity, and Inclusion. ECF No. 28 at PAGEID # 286–87. In that role, Frye's primary responsibility was to oversee the Board's Equal Employment Opportunity policies. *Id.* at PAGEID # 288–91.

## B. Coughenour assaulted Doe in 2019, after grooming him for years.

Doe met Coughenour when Doe was in third grade. ECF No. 29 at PAGEID # 384–87. As a Clinton student, Doe participated in school-sponsored theatre and talent shows, which Coughenour helped produce. *Id.* After Doe graduated from Clinton Elementary, Coughenour continued interacting with Doe, mostly when Doe volunteered at Clinton to help with theatre and talent show

productions like the ones he participated in as a student. *Id.* at 391. But

Coughenour also had Doe over to his house multiple times. *Id.* at 389.

Doe specifically recalls that while he was in elementary, middle, and early

high school:

- Coughenour showed him nude photos on his phone in a Clinton classroom when Doe was in fifth grade. *Id.* at PAGEID # 416.

- Coughenour joked about how quickly Doe could become erect when Doe was in sixth, seventh, or eight grade. ECF No. 30 at PAGEID # 521.

- Coughenour made comments about how attractive Doe was, referring to his buttocks and face, when Doe was in seventh or eighth grade. ECF No. 29 at PAGEID # 393.

- Coughenour asked Doe about his pubic hair growth and advised him to shave because "You don't want girls flossing their teeth down there." *Id.* at PAGEID # 394.

- Coughenour requested and received a nearly nude photo from Doe. ECF No. 29 at PAGEID # 395–96.

- Coughenour told Doe, "[W]e need to get you talking to adults. You're more mature than these girls at your school. Yeah, you're ready to be dating adults," *id.* at PAGEID # 405, and then introduced Doe to

  o an adult female for "telephone sex" (mutual masturbation while communicating by phone), *id.* at PAGEID # 433–34, and

  o an adult couple who requested sexual photographs from and offered to meet Doe, *id.* at PAGEID # 435.

After all this grooming, Coughenour ultimately sexually assaulted Doe in

November 2019. The assault occurred as Doe again volunteered to help

Coughenour produce a talent show at Clinton. ECF No. 29 at PAGEID # 421.

One night, after Doe helped Coughenour set up for a show, Coughenour reached

for and touched Doe's penis over his clothing.  ECF No. 29 at PAGEID # 424.

Then, Coughenour took Doe's hand and led him into a small storage room,

where Doe performed oral sex on Coughenour.  *Id.* at 424–27.

Doe eventually told his parents that Coughenour assaulted him.  *Id.* at 429.

Doe's parents, in turn, reported Coughenour to Board officials who immediately

called the Columbus Police.  *Id.* at 407–413.  Coughenour has since been

convicted of aggravated assault, a fourth-degree felony.  He served a local

sanction of six months at the Franklin County Correctional Center and was

placed on a period of Community Control for five years.  Mot. Ex. A3, ECF No. 40

at PAGEID # 705–06.  His sentence also required cognitive behavioral

programming, random urine screens, and verifiable employment, among other

requirements.  *Id.*

## C. Before Coughenour assaulted Doe, teachers and a parent alerted Board employees (including Graff) to other sexual misconduct.

### 1. Coughenour reportedly spanked a female co-worker's buttocks, prompting a disciplinary hearing and letter.

On his way out after setting up for the Fall 2012 Clinton Elementary talent

show, Coughenour approached a female coworker while he waited at a bus stop.

When the bus arrived and Coughenour went to leave, he slapped his co-worker's

buttocks as he said, "See you later" or "See you later girlfriend."  ECF No. 31 at

PAGEID # 579.  His co-worker responded by telling him not to do that.  *Id.*

Coughenour approached the same co-worker the next day and brought up the

spank from the night before.  *Id.*  This time he spanked himself and said, "You

know you liked it" or "You know you want some of that." *Id.* A janitor witnessed the incident and reported it. *Id.*

The janitor's report launched an investigation by a Board representative. *See id.* Beyond finding the above facts, the representative determined that "the conduct could not be fully confirmed to the level of the charges." *Id.* at PAGEID # 581. The Board took no disciplinary action against Coughenour besides sending him a "Letter of Direction." *Id.*

Graff remained unaware of Coughenour's spanks until her deposition. ECF No. 25 at PAGEID # 94–100. When they happened, Graff was not yet principal at Clinton Elementary (her predecessor Kathy Leffler was). *Id.* And Leffler did not apprise Graff of Coughenour's spanking incident. *Id.* Nor did Graff discover the incident on her own, by reviewing Coughenour's personnel file (for example). *Id.*

### 2. A parent complained to Graff that Coughenour was exchanging innuendo-laden texts with her 12-year-old son at 2 a.m.

In Fall 2016, a Dominion Middle School student's mother ("Cynthia Roe[1]") informed Graff of an alarming interaction between Coughenour and her 12-year-old son ("Charlie Roe"). ECF No. 25 at PAGEID # 112–20; ECF No. 25-4 at PAGEID # 176. According to Cynthia, Coughenour "cross[ed] the line" with some texts he sent to her son. ECF No. 25 at PAGEID # 116. Coughenour had been exchanging texts with Charlie for around a year, his mother told Graff. *Id.* at

---

[1] The Court refers to both the mother and child pseudonymously.

PAGEID # 176. But more recently, Coughenour sent Charlie texts between midnight and 2 a.m. that were "inappropriate." ECF No. 25-4 at PAGEID # 176. Coughenour asked Charlie whether he hangs out in the Short North, a neighborhood near downtown Columbus. *Id.* And, most disturbingly, Coughenour asked Charlie: "5.5 is that your height, lol?" *Id.* According to Graff, Cynthia interpreted the text as an allusion to the size of her 12-year-old son's penis. ECF No. 25 at PAGEID # 116. Graff agrees that interpretation is "possible." *Id.* at PAGEID # 114.

Graff stresses that Cynthia wanted Coughenour to stop communicating with her son only—she did not want disciplinary consequences to befall Coughenour. *Id.* at PAGEID # 113. Graff honored that wish by meeting with Coughenour in her office and requesting that he stop texting Charlie. *Id.* at PAGEID # 118. Graff followed up with a letter memorializing her conversation with Coughenour about Cynthia's concern:

> On Friday, Cynthia [Roe], [Charlie Roe's] mother, came to meet with me. She had a concern that her son [redacted] 12 years old, has been texting you and visa [sic] versa. She shared with me that some of the texts date back to 2015 but that the recent ones have cross [sic] the line, and that she was alarmed enough to let administration know.
>
> Mrs. [Roe] mentioned that some were sent late at night, midnight and 2:00 a.m. and that the conversation between adult and minor were inappropriate. She showed me two, you were asking "do you hang out on the Short North?" Also comments about his height and weight, so "5.5 is that your height, lol" was inappropriate and alarming for a mother to read.
>
> She has asked [Charlie] to stop communicating with you through social media, including texts and she is asking you to do the same.

When I met with you, you mentioned that your FaceBook is open to all to see, read and follow you. It is my recommendation to make private settings for friends only, since we know that anyone can read your postings including students, and that you discontinue texting with [Charlie].

I am sharing with Mrs. [Roe] as record that our meeting took place and that you agreed to not communicate with [Charlie] any further.

ECF No. 25-4 at PAGEID # 176. Graff claims she sent the letter to Coughenour, Cynthia Roe, and Graves (Graff's supervisor). ECF No. 25 at PAGEID # 142. She also purportedly placed a copy in Coughenour's "evaluation file" (but not his personnel file). *Id.* Although Graff recalls running this plan by Graves before meeting with Coughenour, *id.* at PAGEID # 116–17, Graves has (at best) a vague recollection of discussing the texts, ECF No. 27 at PAGEID # 262, and no recollection of the follow-up letter, *id.* at PAGEID # 257–58.

### 3. Concerned teachers sent Graff and Board administrators a letter about Coughenour's inappropriate sexual behavior.

In Spring 2017, an anonymous group of "Concerned Teachers" emailed Graff and other Board administrators:

The circumstances and concerns being stated in this email regarding Patrick Coughenour have taken several years to culminate.

Past supervisors and employees are aware of his inappropriate use of offensive sexual language in common work spaces [sic], the presentation of graphic sexual content on his phone, and his inappropriate picture posting on social media of past and present underage students. His conversations and action are not always professional by Columbus City School Standards.

Multiple coworkers have expressed the concerns stated above, along with other concerns as well but are uncomfortable reporting the issues because they have been brushed aside in the past. Patrick Coughenour is perceived by many as having preferential treatment

because of the extra activities he provides for the building that are not part of his job description, but completed during school hours.

Many teachers ask that the school district seriously investigate this ongoing matter and allegation or consider transferring Patrick to another building. Children safety and common workplace decency should no [sic] be pushed aside because of other services that are deemed beneficial to the building.

ECF No. 25-5 at PAGEID # 178. The email conflicted with Graff's understanding of the staff's opinion about Coughenour; she described Coughenour's relationship with the staff as "very cordial, jovial, [and] happy-go-lucky." ECF No. 25 at PAGEID # 103. But once Graff saw the email, she spoke with Board Employee Relations Director Pfeiffer. ECF No. 25 at PAGEID # 110–11, 122–27, 147; ECF No. 25-5 at PAGEID # 177.

During their conversation, Graff "put two and two together" and told Pfeiffer about the late-night-texting complaint against Coughenour from the year before. ECF No. 25 at PAGEID # 124, 126–27. Pfeiffer recounted their conversation via email in a thread with the Concerned Teachers email:

Just following up on the [Concerned Teachers' message]. I spoke with Carmen Graff this afternoon. She offered additional information and concern about Mr. Coughenour who is a Special Needs IA. Apparently several months ago, a parent complained to Carmen that Coughenour was texting her son in the middle of the night and otherwise having inappropriate/frequent communications with the boy?!? She told me that she gave Mr. Coughenour a letter telling him to stop the conduct. She did not go through Employee Relations. In any event, she is again raising some concerns about the level of his relationship/communication with current students and in keeping in contact with students who have passed on to Dominion Middle School.

ECF No. 25-5 at PAGEID # 177. Although Graff mentioned the complaint to Pfeiffer, she neither showed Pfeiffer the letter she sent nor told Pfeiffer the texts' exact wording (nor did she show Pfeiffer the letter she sent to Coughenour). ECF No. 26 at PAGEID # 204–206. In fact, Pfeiffer recalls that, during their conversation, Graff explicitly denied that the texts were sexual—their timing and frequency were the only cause for concern. *Id.*

Pfeiffer reassigned Coughenour to a different school, ECF No. 26-2 at PAGEID # 235, but did not investigate Coughenour any further, ECF No. 26 at PAGEID # 214–16. Pfeiffer passed the investigation to Frye because, as Pfeiffer saw it, the Concerned Teachers' message implicated workplace EEO issues within Frye's purview. *Id.* at PAGEID # 210–11.

Frye investigated the "Concerned Teacher" email. ECF No. 28 at PAGEID # 305–314; ECF No. 28-3 at PAGEID # 334–36. But, because, as Frye saw it, Coughenour's 2016 texting incident was non-EEO, she ignored it in her investigation. ECF No. 28 at PAGEID # 303–04. Frye concluded that Coughenour probably violated the 4362 Anti-Harassment Policy and recommended that he review certain policies and take certain courses. ECF No. 28-3 at PAGEID # 336.

But that is all the discipline Coughenour received. Coughenour eventually returned to his regular duties, where he remained until Doe's parents reported that he sexually assaulted their son. ECF No. 26 at PAGEID # 217.

## II.    PROCEDURAL BACKGROUND

Doe sued the Board, Graff, and Coughenour in this Court.  Doe brought seven claims.  *See generally* Compl., ECF No. 1.  Four remain: (1) a Title IX claim against the Board; (2) a Section 1983 claim against Graff;[2] (3) an Ohio law intentional infliction of emotional distress ("IIED") claim against Graff;[3] and (4) an Ohio law negligence claim against Graff.

The matter is now before the Court on cross-motions for summary judgment.  *See generally* ECF Nos. 33, 40.  Doe moved for summary judgment on three Title IX issues: (i) the Board receives federal funds and therefore waived sovereign immunity;[4] (ii) the Board had actual knowledge of a pattern of sexual harassment by Coughenour; and (iii) the Board acted with deliberate indifference to Coughenour's harassment.  ECF No. 33.  Defendants moved for summary judgment on all Doe's claims.  ECF No. 40.

---

[2] Plaintiff also originally sued the Board under § 1983.  Now he concedes that claim in response to Defendants' motion for summary judgment.  The Court therefore **GRANTS** Defendants' motion for summary judgment on Plaintiff's § 1983 claim against the Board.

[3] Plaintiff originally brought an IIED claim against the Board also.  He concedes that claim now too.  The Court therefore **GRANTS** the Board's motion for summary judgment on Plaintiff's IIED claim against it.

[4] The Board admits that it receives federal funds.  ECF No. 31 at PAGEID # 582.  The Court therefore **GRANTS** summary judgment to Plaintiff on this issue.

### III.   STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993).  The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56).  A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993).  In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).  When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

## IV.    DISCUSSION

**A.    Summary judgment on Doe's Title IX claim is inappropriate because whether the Board exhibited "deliberate indifference" despite "actual notice" raises genuine issues of material fact.**

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(A).  "Title IX is enforceable through a judicially implied private right of action, through which monetary damages are available."  *Doe v. Miami Univ.*, 882 F.3d 579, 589 (6th Cir. 2018) (internal citations and quotations omitted); *see also Cannon v. Univ. of Chicago*, 441 U.S. 677, 704 (1979).  Title IX "unquestionably" encompasses a "duty not to permit teacher-student harassment in its schools, . . . and recipients violate Title IX's plain terms when they remain deliberately indifferent to this form of misconduct." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999) (cleaned up).  To synthesize, Title IX permits a student to hold a school district liable in damages for a teacher's sexual harassment of the student.  *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

To succeed on a teacher-student sexual harassment Title IX claim, a plaintiff must show: (1) a teacher sexually harassed the plaintiff-student; (2) an official with authority to take corrective action had "actual notice" of a substantial risk that the teacher would harass a student like they harassed plaintiff; (3) the school's response exhibited "deliberate indifference" to that risk; and (4) the

school's deliberate indifference caused the plaintiff-student to suffer discrimination. *See Wamer v. U. of Toledo*, 27 F.4th 461, 471 (6th Cir. 2022) (citing *Williams v. Paint Valley Loc. Sch. Dist.*, 400 F.3d 360, 368 (6th Cir. 2005) (hereinafter, "*Paint Valley III*")), *cert. denied*, 143 S. Ct. 444 (2022); *Doe I v. Cuyahoga Cnty. Comm. Coll.*, 655 F. Supp. 3d 669, 677 (N.D. Ohio 2023).[5]

Compared to other kinds of Title IX claims, teacher-student sex harassment claims enjoy a "less stringent standard." *Id.* at 470–71; *see also Davis*, 526 U.S. at 653 ("The relationship between the harasser and the victim necessarily affects the extent to which the misconduct can be said to breach Title IX's guarantee of equal access to educational benefits and to have a systemic effect on a program or activity."). Mindful of this lower bar, the Court now analyzes each of the four *Wamer* elements, finding each satisfied.

### 1. Coughenour sexually harassed Doe, undisputedly.

For the Board to be liable under Title IX for teacher-student harassment, a teacher must have actually harassed Doe. *Wamer*, 27 F.4th at 471.

---

[5] Both parties misstate this standard. They include "severe, pervasive, and objectively offensive" harassment as an element. Mot., ECF No. 33 at PAGEID # 601; Resp., ECF No. 39 at PAGEID # 623. It is an element in student-on-student harassment cases. *See Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613, 620 (6th Cir. 2019); *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999). But it is not one in teacher-student harassment cases. *Wamer*, 27 F.4th at 468–69; *see also Sauls v. Pierce Cnty. Sch. Dist.*, 399 F.3d 1279, 1284 (11th Cir. 2005) ("Because this case involves teacher-on-student harassment, Appellants need not establish [that the] misconduct was 'so severe, pervasive, and objectively offensive' that it denied . . . equal access to educational programs or opportunities."). The other two elements that the parties state ("actual notice" and "deliberate indifference") are correct though, and those two form the core of teacher-student-harassment Title IX claims. *Gebser*, 524 U.S. at 290–91.

The actual-teacher-harassment element is straightforwardly met here. Coughenour was a Columbus City Schools instructional aide, which qualifies as a "teacher." And all parties agree that Coughenour was convicted of aggravated assault in the Franklin County Court of Common Pleas for sexually assaulting Doe. *State v. Coughenour*, Case No. 20CR5813 (C.P. Franklin); ECF No. 31 at PAGEID # 583. Plus, that aggravated assault was the culmination of many years of grooming, which may independently constitute sexual harassment. *Cf. Chivers v. Cent. Noble Cmty. Schools*, 423 F. Supp. 2d 835, 847–49 (N.D. Ind. 2006) (holding that a teacher's sexual instant messages to a student were pervasive and severe enough to withstand a motion for summary judgment). Doe's evidence therefore easily satisfies the actual-teacher-harassment element.

### 2. Genuine issues permeate the "actual notice" prong.

A school district may only be liable under Title IX if it has "actual notice of . . . the teacher's misconduct." *Gebser*, 524 U.S. at 277. Whether a district has "actual notice" hinges on the answers to two questions: (a) "who knew?" and (b) "what did they know?" *See Doe v. Hamilton Cnty. Bd. of Educ.*, 329 F. Supp. 3d 543, 564 (E.D. Tenn. 2018) ("[A]ctual notice . . . is ultimately a matter of who knew what and when."); *Chapman v. Seuffert*, 713 F. Supp. 3d 425, 435 (N.D. Ohio 2024).

a.   **Graff, Graves, Pfeiffer, and Frye are all probably "appropriate people," as defined by *Gebser*.**

Starting with "who," a school district can be held liable under Title IX only if an "appropriate person" knew of the abuse.  *Gebser*, 524 U.S. at 290.  An "appropriate person" is "an official of the [school district] with authority to take corrective action to end the discrimination."  *Id.*  This person must be able to "address the alleged discrimination and to institute corrective measures."  *Id.* Whether someone is an appropriate person is "'necessarily a fact-based inquiry'"—not readily susceptible to summary judgment.  *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1254–55 (11th Cir. 2010) (quoting *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1247 (10th Cir. 1999)).

Public school principals—like Graff—generally qualify as "appropriate people" in Title IX teacher-student sex abuse cases.  *See Doe v. Farmer*,  No. 3:06-0202, 2009 WL 3768906, at *8 (M.D. Tenn. Nov. 9, 2009); *see also* Ronna Greff Schneider, 1 Education Law § 4:12 n.33 (September 2024) (collecting cases).

Graff and her supervisor Graves confirmed that Graff had the authority to discipline staff or initiate an investigation, without anyone else's permission.  ECF No. 25 at PAGEID # 91; ECF No. 27 at PAGEID # 249–50.  Graff is therefore likely an appropriate person.  Or, at least, Doe has put forth evidence to allow a reasonable juror to conclude that Graff is an appropriate person.  Per lesser-includes-the-greater logic, Graff's supervisor Graves was also likely an

appropriate person. As were Pfeiffer and Frye, who likewise had authority to oversee dismissal and investigation of Board employees. Doe thus answers "who knew?" by pointing to several plausible "appropriate people."

### b. Graff knew that Coughenour sent sexually suggestive texts to a student late at night—which plausibly signals a "substantial risk" that he would sexually abuse a student.

The next question the Court must address is "what did they know?" In answering that question, the plaintiff must show knowledge of a "substantial risk" that the teacher would sexually abuse a student like plaintiff. *See Paint Valley III*, 400 F.3d at 363, 368 (affirming "the rulings of the district court in full."). Knowledge of "substantial risk" may be based on prior complaints pertaining to students besides the plaintiff. *Hart v. Paint Valley Loc. Sch. Dist.*, No. C2-01-004, 2002 WL 31951264, at *6 (S.D. Ohio Nov. 15, 2002) (denying summary judgment on Title IX) (hereinafter "*Paint Valley I*") ("[T]he actual notice standard is met when an appropriate official has actual knowledge of a substantial risk of abuse to children in the school based on prior complaint of other students.").[6]

---

[6] *Accord Williams v. Paint Valley Loc. Sch. Dist.*, No. C2-01-004, 2003 WL 21799947, at *2, 5 (S.D. Ohio July 16, 2003) ("*Paint Valley II*") (denying motions for a new trial and judgment as a matter of law), aff'd *Paint Valley III*, 400 F.3d at 368; *Warner*, 27 F.4th at 471 (citing *Paint Valley III*, 400 F.3d at 368); *see also Farmer*, 2009 WL 3768906, at *9 ("But the 'actual notice' required by *Gebser* is not notice that a particular plaintiff was being abused. Instead, a plaintiff only needs to establish that the school district failed to act even though it knew that the teacher posed a substantial risk of harassing students in general. A plaintiff can meet her burden by showing that the defendant knew that the teacher was abusing a non-plaintiff student, because such abuse implies a substantial risk that the teacher was abusing other students as well." (cleaned up)); *Johnson v. Galen Health Insts., Inc.*, 267 F. Supp. 2d 679, 687–88 (W.D.Ky.2003) (collecting cases).

Like the "appropriate person" inquiry, the "substantial risk" inquiry is fact-intensive and so should usually be reserved for a jury. *Id.*

Doe's answer to "what" can be sorted into three factual clusters:

- Coughenour spanked a co-worker in 2012.

- Coughenour texted 12-year-old Charlie Roe often, sometimes as late as 2 a.m., in 2015–2016. At least one of those texts contained an apparent sexual innuendo about Roe's penis.

- Coughenour allegedly used offensive sexual language and presented graphic sexual images on his phone, among other things, in common workspaces, causing his colleagues to complain to school administration.

The first and third clusters, alone, likely would not meet Title IX's actual notice requirement. *See Hackett v. Fulton Cnty. Sch. Dist.*, 238 F. Supp. 2d 1330, 1349 (N.D. Ga. 2002) ("[A] teacher's harassment of another teacher can not be considered sufficient to put the principal on notice that the teacher may be committing sexual misconduct against *students*." (emphasis in original)). Indeed, Coughenour's inappropriate workplace conduct is of a piece with the inappropriate classroom remarks in *Gebser*—remarks which the U.S. Supreme Court held could not support "actual notice." 524 U.S. at 277–78. So the Court would likely grant summary judgment for the Board if knowledge of teacher-on-teacher harassment were all that Doe offered. But it is not.

The second cluster—Graff's awareness that Coughenour sent a student sexually suggestive text messages—suffices, at summary judgment, for "actual notice." Based on the Roe texts, a reasonable juror could infer that Graff knew

that Coughenour had a high propensity to sexually abuse children.  Two factors

ground this conclusion: (i) Graff knew the Roe texts were sexual; and

(ii) Coughenour's harassment of Roe shares a pattern with his harassment of

Doe.

### i.     Coughenour's texts to Charlie Roe were sexual, and Graff knew it.

Some teacher-student texts reflect a "substantial risk" of sexual

harassment.  When the teacher-to-student texts have sexual content which an

administrator knows about, Courts have found the administrator knew of a

"substantial risk" to students.  *See, e.g.*, *Farmer*, 2009 WL 3768906, at *10;

*cf. Chivers*, 423 F. Supp. 2d at 847–48.  What is more, if an administrator knows

that a teacher has been texting a student and merely *suspects* that the texts

have sexual content, then that mere suspicion may qualify as knowledge of a

"substantial risk" to students, even if no texts were in fact sexual.  *See Thorpe v.

Breathitt Cnty. Bd. of Educ.*, 8 F. Supp. 3d 932, 944 (E.D. Ky. 2014).  By

contrast, if an administrator knows that a teacher has been texting a student but

neither knows about nor suspects any sexual content, then the administrator

does not know of a "substantial risk," even if some texts were in fact sexual.

*Campbell v. Dundee Cmty. Sch.*, 661 F. App'x 884, 886–7, 888–89 (6th Cir.

2016); *cf. Henderson v. Walled Lake Consol. Schools*, 469 F.3d 479, 490 (6th

Cir. 2006).  Known-or-suspected sexual content is therefore a touchstone.

A reasonable jury could infer that Graff knew or suspected that Coughenour's texts to Charlie Roe were sexual, from: one, the texts themselves; two, what Cynthia Roe told Graff about the texts; or three, what Graff herself has said about them.

*One, the texts themselves*. A reasonable jury could read "do you hang out in the Short North?" and "5.5 is that your height, lol" as self-evidently sexual (the Court sure does). And if a jury reads the texts that way, they could infer that Graff knew the texts were sexual simply because she read them.

*Two, what Cynthia Roe told Graff about the texts*. Even if Graff herself were initially oblivious to the text's sexual undertone, Cynthia Roe made her aware. Graff understood that Cynthia Roe believed the 5.5 text was a reference to her son's penis size. ECF No. 25 at PAGEID # 116.

*Three, what Graff herself has said about the Roe texts*. Graff's own words belie any ignorance about their sexual content. When "Concerned Teachers" complained about Coughenour's sexually inappropriate workplace conduct, Graff "put two-and-two together" and told Pfeiffer about the Roe texts. *Id.* at PAGEID # 124. Why would a complaint about sexual workplace misconduct prompt Graff to tell Pfeiffer about the Roe texts if Graff did not read the texts as sexual? Graff must have read them as sexual, a reasonable jury might answer. Most explicitly, Graff admitted that the Short North and 5.5 texts "could have been sexual," *id.* at PAGEID # 114—the same phrase used by the school official in *Thorpe*, 8 F. Supp. 3d at 945.

Taking this evidence together, a reasonable jury could conclude that Graff knew (or at least suspected) that Coughenour sent Charlie Roe sexual texts—likening this case to *Thorpe* and distinguishing it from *Campbell*. Or, in more fundamental terms, Graff read the Roe texts, they reek of grooming, and grooming reeks of a "substantial risk" of sex abuse.

> ### ii.     Coughenour's harassment of Charlie Roe fit the same pattern as his harassment of Doe

Coughenour maintained contact with both Roe and Doe when they passed on to Dominion Middle School. And he did so largely by text. This common pattern bolsters the actual notice inference.

The more similar the known prior harassment is to the harassment that Doe endured, the more likely it is that the prior harassment gave the Board "actual notice." *See Wyler v. Connecticut State Univ. Sys.*, 100 F. Supp. 3d 182, 190 (D. Conn. 2015) ("[T]he prior harassment about which the University had knowledge must have been sufficiently similar to the harassment about which plaintiff complains."); *cf.* Christopher B. Mueller & Laird C. Kirkpatrick, 2 Federal Evidence § 4:88 (the similarity of prior child molestation to the alleged child molestation is "[t]he most important factor bearing on probative worth").

Not only was there a common pattern here, but Graff herself even recognized it. In a conversation with Pfeiffer, Graff "again rais[ed] some concerns about the level of [Coughenour's] relationship/communication with current students and *in keeping in contact with students who have passed on to*

*Dominion Middle School.*" ECF No. 25-5 at PAGEID # 177 (emphasis added). True, Coughenour's text harassment of Doe and Charlie Roe differed in that Coughenour's texts with Charlie fortunately never pressed beyond innuendo. Coughenour never solicited a nude photo from Roe, for example. But, at a minimum, the prior harassment known to Graff (Coughenour's harassment of Charlie Roe) overlaps with the harassment endured by Doe. Both, in a word, resemble grooming.

In sum, Doe answers the question "who knew what" with evidence that principal Graff (and maybe others) knew that Coughenour had been texting 12-year-old Charlie Roe sexual innuendo. Viewing that evidence in the light most favorable to Doe, the Court **DENIES** the Board's motion for summary judgment on "actual notice."

Whether Doe is entitled to summary judgment on this element is a much closer call. The Court suspects that almost all reasonable juries would find that the Board had "actual notice." But, given the fact-intensive nature of the inquiry and the Court's obligation to make all inferences in the Board's favor, the Court **DENIES** Doe's motion for summary judgment too.

### 3. A reasonable jury could conclude that Graff's failure to investigate or otherwise discipline Coughenour amounts to a "clearly unreasonable response."

Having found genuine issues of material fact going to "actual notice," the Court moves on to "deliberate indifference." A school district may be held liable for teacher-student harassment only if the plaintiff shows that the district was

"deliberately indifferent."  *Gebser*, 524 U.S. at 290–91.  To establish "deliberate indifference," a plaintiff must prove that the response (or lack of a response) to the teacher-student abuse is "*clearly unreasonable* in light of known circumstances."  *Paint Valley III*, 400 F.3d 360, 364 (6th Cir. 2005) (emphasis in original); *see also Davis*, 526 U.S. at 648.  This standard, like the actual notice standard, "does not lend itself well to a determination by the Court on summary judgment."  *Paint Valley I*, 2002 WL 31951264, at *9.  The issue should go to a jury so long as a plaintiff "advance[s] some evidence" of deliberate indifference. *Id.*  Doe has done so here.

A reasonable jury can find deliberate indifference based on a failure to investigate a parent report that "begged for an investigation."  *J.M. ex rel. Morris v. Hilldale Indep. Sch. Dist. No. 1-29*, 397 F. App'x 445, 454 (10th Cir. 2010); *see also Vance*, 231 F.3d at 262 (6th Cir. 2000); *Swearingen v. Pleasanton Unified Sch. Dist. 344*, 641 F. Supp. 3d 1141, 1171–74 (D. Kan. 2022).

Cynthia Roe's report about Coughenour's texts to her son begged for an investigation.  Yet Graff effectively concedes that she did not initiate one.  She never asked whether Coughenour was texting other students, for example.  ECF No. 25 at PAGEID # 120.  Nor did she warn Coughenour against harassing other students.  *Id.* at PAGEID # 118–19.  Nor did she put "protective measures or procedures" in place to prevent Coughenour from reoffending.  *Paint Valley I*, 2002 WL 31951264, at *8; *see also Brodeur v. Claremont Sch. Dist.*, 626 F. Supp. 2d 195, 209–210 (D.N.H. 2009) (noting a failure to adopt "prophylactic

measures, such as training or monitoring"). Nor did Graves, Pfeiffer, or Frye do any of the above when Graff (purportedly) informed them of Cynthia Roe's complaint. *Cf. Broward County*, 604 F.3d at 1261–62 (noting a "fail[ure] to apprise" others). Based on these deficiencies, a reasonable jury could find deliberate indifference.

Granted, Graff did *something*; this is not a case where a Title IX defendant "made no effort whatsoever." *Davis*, 526 U.S. at 654. Graff met with Coughenour, told him to stop communicating with Charlie Roe, and then followed up in a letter that records Coughenour's agreement to stop. But that is all Graff did. Defendants retort with two arguments for why Graff's response was enough. Neither convince the Court.

First, Graff's response to the Roe texts was sufficient because it complied with Cynthia Roe's wishes, Defendants maintain. According to them, Cynthia Roe "was adamant that she did not want her complaint to go any further" than asking Coughenour to stop texting her son. Mot. 10, ECF No. 40 at PAGEID # 637. But a parent's wishes do not obviate a school's Title IX obligations. *Cf. Doe v. Miami Univ.*, 882 F.3d 579, 591 (6th Cir. 2018) ("The district court was incorrect to suggest that John needed to have made a formal complaint about Jane in order to plead a deliberate-indifference claim."). Even if a jury believed that Cynthia Roe asked Graff not to investigate, it could still find the Board deliberately indifferent for the deficiencies discussed above.

Second, Defendants analogize to *McCoy v. Bd. of Educ.*, 515 F. App'x 387 (6th Cir. 2013). Both here and in *McCoy*, Columbus City Schools responded to prior reports of harassment by sending the teacher a letter demanding them to stop the complained-of conduct. *Id.* at 389. The Sixth Circuit in *McCoy* granted summary judgment to the school district on deliberate indifference. *Id.* at 392. And so this Court should do the same, Defendants submit.

But *McCoy* is readily distinguishable. The school district there investigated the prior harassment reports, whereas Graff did not investigate Coughenour for the Roe texts. *Id.* at 389, 392. And the prior harassment reports in *McCoy* involved "ostensibly non-sexual" conduct, whereas the Roe texts are ostensibly sexual. *Id.* at 392. *McCoy* therefore does not control.

If anything, *McCoy* cuts against Defendants: Columbus City School officials responded more aggressively to a report of non-sexual conduct there than they did to a report of (apparently) sexual conduct here. Granted, *McCoy* might not cut too sharply because the Sixth Circuit affirmed summary judgment for the school district based on its response. *Id.* But other courts have denied summary judgment to school districts that mounted proportionally greater responses than the one here. *See Thorpe*, 8 F. Supp. 3d at 945–46. In *Thorpe*, a parent told school officials that a teacher sent 168 texts to the parent's daughter over a short span and at odd hours—texts which the officials believed "could have been sexual," though they never read them. *Id.* at 936–37. The officials responded by launching an investigation and suspending the teacher for

ten days without pay, neither of which Graff did here.  *Id.* at 937.  Even so, the *Thorpe* court denied summary judgment to the school district.  *Id.* at 945–46.  Graff's proportionately weaker response pushes this Court to conclude that deliberate indifference should likewise go to a jury here.

In short, a reasonable juror might expect a school principal who receives a report that reeks of grooming to at least investigate.  Graff did not investigate Coughenour when Cynthia Roe reported conduct suggestive of grooming.  A reasonable juror could therefore conclude that Graff was "deliberately indifferent."

In sum, the Court's conclusion on "deliberate indifference" mirrors its conclusion on "actual notice."

Viewing the evidence in the light most favorable to Doe, the Court **DENIES** the Board's motion for summary judgment on "deliberate indifference."

Whether Doe is entitled to summary judgment on this element is a closer call.  The Court suspects that most reasonable juries would find that the Board was deliberately indifferent.  But, given the fact-intensive nature of the inquiry and the Court's obligation to make all inferences in the Board's favor, the Court **DENIES** Doe's motion for summary judgment on deliberate indifference as well.

### 4. Because Graff knew about the Roe texts years before Coughenour assaulted Doe, the causation prong is met.

The Court turns to the final *Wamer* element: causation.  To prevail on a teacher-student-harassment Title IX claim, a plaintiff must prove that "the school's deliberate indifference caused her to suffer discrimination."  *Wamer*, 27

F.4th at 471.  A plaintiff may carry this burden by showing: (a) they experienced another instance of harassment after the school's unreasonable response, which (b) deprived the plaintiff of educational opportunities available to other students. *See id.*

Doe experienced another instance of harassment after Cynthia Roe complained to Graff about Coughenour in Fall 2016.  Although Coughenour met Doe in 2012 and so may have also harassed him before Fall 2016, the worst instances of sexual harassment all occurred after Cynthia Roe's complaint. Coughenour sexted with Doe in 2018–2019.  Over the same period, he set Doe up with other adults.  And, ultimately, Coughenour sexually assaulted Doe in November 2019.  This timeline thus satisfies *Wamer*'s causation test.

Doe does not move for summary judgment on whether Coughenour's assault deprived Doe of educational benefits.  Nor do Defendants contest the point in their motion for summary judgment.  All the same, the Court finds that the issue turns on a genuine dispute of material fact.

Unlike when a student sexually harasses their peer, "[w]hen a teacher sexually harasses a student, it can more easily be presumed that the harassment would undermine and detract from the student's educational experience." *Wamer*, 27 F.4th at 471 (cleaned up).  This general presumption applies with extra force here, given that Coughenour's assault of Doe traumatized him enough to warrant psychological treatment at Nationwide Children's Hospital. ECF No. 29 at PAGEID # 108–09.  Even so, Defendants push back against

*Warner*'s general presumption, arguing that Doe's academic and extracurricular achievement signify that he was not deprived of any educational benefit.  Resp. 4, ECF No. 39 at PAGEID # 623.  All in all, the Court finds a genuine issue going to Doe's deprivation.

Overall, a reasonable jury could hold the Board liable on Doe's Title IX claim.  The Court accordingly **DENIES** Defendants' motion for summary judgment on Doe's Title IX Claim as a whole.

### B.  Graff is entitled to summary judgment on Doe's § 1983 claim because Doe offers nothing more than Graff's "failure to act."

Does brings a claim against Graff under 42 U.S.C. § 1983, which reads:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."

Doe alleges that Graff deprived him of "his constitutional liberty and equal protection interest under the Fourteenth Amendment[.]"  Compl. ¶ 45, ECF No. 1 at PAGEID # 8.  Coughenour no doubt deprived Doe of his Fourteenth Amendment right to bodily autonomy.  *See Doe v. Claiborne Cnty.*, 103 F.3d 495, 506 (6th Cir. 1996) ("[A] schoolchild's right to personal security and to bodily integrity manifestly embraces the right to be free from sexual abuse at the hands of a public school employee.").  But, because Doe sues Graff (not Coughenour), Doe must satisfy the "supervisory liability" test to establish her liability.  *Id.* at 511; *see also Doe ex rel. Doe v. City of Roseville*, 296 F.3d 431, 439 (6th Cir. 2002).

To pass the "supervisory liability" test, Doe must show "active unconstitutional behavior"—a mere failure to act is not sufficient. *Id.* at 440 (internal citations and quotations omitted). Put differently, Graff cannot be held liable under § 1983 unless she participated in, encouraged, authorized, or (at a minimum) knowingly acquiesced to Coughenour sexual assaulting Doe. *Id.*

Graff did no such thing. She never knowingly acquiesced in—much less participated in, encouraged, or authorized—Coughenour's harassment of Doe. Nor could she have, not while principal at Clinton Elementary anyway. She retired in May 2018 before the worst of Coughenour's harassment. ECF No. 25 at PAGEID # 100, 131–36. All told, Doe rests exclusively on Graff's failure to act; he points to no "active unconstitutional behavior." And while Graff's omissions support Doe's Title IX claim against the Board, they cannot support an individual-capacity § 1983 claim against Graff. *See, e.g., Thorpe*, 8 F. Supp. 3d at 942–43. The Court therefore **GRANTS** Graff's motion for summary judgment on Doe's § 1983 claim.

**C. Doe offers enough evidence to raise genuine issues of material fact about Graff's political subdivision immunity and the merits, precluding summary judgment on his state-law claims.**

Doe brings two Ohio state-law claims against Graff: an IIED claim and a negligence claim. Graff invokes political subdivision immunity for both. Mot. 18–19, ECF No. 40 at PAGEID # 645–46. On top of immunity, for IIED, she asserts Doe presents no evidence of "extreme or outrageous" conduct. *Id.* at 18, PAGEID # 645. And for negligence, she asserts that she had no "duty" to protect

Doe from Coughenour's sexual harassment. *Id.* at 20, PAGEID # 647. The Court addresses each of these arguments in turn below, explaining why none persuade.

### 1. Political subdivision immunity permits Doe's state-law IIED and negligence claims against Graff.

Ohio Revised Code § 2744.03 governs whether political subdivision immunity shields a public-school employee from suit. *Parra v. Jackson*, 171 N.E.3d 452, 468 (Ohio Ct. App. 2021). Under § 2744.03(A)(6), an employee of a political subdivision—like Graff—is immune from liability unless:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
>
> (c) Liability is expressly imposed upon the employee by a section of the Revised Code.

Both (A)(6)(b) and (A)(6)(c) except Graff from immunity here.

### a. The (A)(6)(b) exception removes Graff's immunity because a reasonable jury could find her "reckless."

The (A)(6)(b) exception denies immunity to a public employee whose acts or omissions were "reckless." Ohio law adopts the Second Restatement of Tort's definition for "reckless":

> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

Restatement (Second) of Torts § 500 (1965); *see also Anderson v. Massillon*, 983 N.E.2d 266, 267, 272 (Ohio 2012) (adopting the Second Restatement's definition); *Thompson v. McNeill*, 559 N.E.2d 705, 708 (Ohio 1990) (same).

Doe has presented enough evidence of recklessness here. Based on Graff's awareness of the Roe texts, a reasonable juror could conclude that Graff "knew or had reason to know" that Coughenour posed an "unreasonably high risk" of sexually abusing another student. Restatement (Second) of Torts § 500 (1965). If that last sentence seems familiar, that is because the same evidence that supports "recklessness" also supports the "actual notice" element of Doe's Title IX claim. "Recklessness" and "actual notice" overlap at awareness of facts giving rise to a "substantial risk." For the same essential reasons the Court finds "actual notice" met at this stage, it therefore also finds "recklessness" met.

The (A)(6)(b) exception applies to both IIED and negligence claims.

The (A)(6)(b) exception applies to IIED claims tautologically (because they share "recklessness" as a common element). *See Meyers v. Cincinnati Bd. of Educ.*, 983 F.3d 873, 885 (6th Cir. 2020); *Doe v. Cuyahoga Cnty. Cmty. Coll.*, 251 N.E.3d 692, 697–99 (Ohio Ct. App. 2024), *appeal not allowed*, 246 N.E.3d 529 (Ohio 2024). IIED requires proof that the defendant "should have known" their actions would cause serious emotional distress. *Woods v. Sharkin*, 192 N.E.3d 1174, 1200 (Ohio Ct. App. 2022). And "should have known" equates to "reckless." *Honek v. Chidsey*, 182 N.E.3d 6, 16 (Ohio Ct. App. 2021); *see also* Restatement (Second) of Torts § 500 (1965) ("had reason to know"). Under the

(A)(6)(b) exception, reckless acts do not receive political subdivision immunity. So whenever an IIED plaintiff presents enough evidence of recklessness to survive summary judgment on the merits, they defeat political subdivision liability in the same stroke. Doe has done so here.

The (A)(6)(b) exception also applies to Doe's negligence claim, even though negligence claims ordinarily require less than recklessness. *See Doe 1 v. Cleveland Metro. Sch. Dist. Bd. of Educ.,* 533 F. Supp. 3d 567, 575–77 (N.D. Ohio 2021); *Doe v. Roman,* 2002 WL 31732468, at *6 (Ohio Ct. App. 2002). Doe's negligence claim otherwise proceeds as usual. *See Cleveland Metro.,* 533 F. Supp. 3d at 575.

By presenting enough evidence to raise a genuine issue of material fact about Graff's recklessness, Doe has stripped Graff of political subdivision immunity for both the IIED and negligence claims, per the (A)(6)(b) exception.

### b. Alternatively, Ohio Revised Code § 2151.421 triggers the (A)(6)(c) exception to Graff's immunity.

The (A)(6)(c) exception applies if another Ohio statute imposes liability on the defendant for the alleged conduct. Ohio Revised Code § 2151.421 expressly imposes liability on school employees like Graff if they fail to report "known or suspected abuse." *See Campbell v. Burton*, 750 N.E.2d 539, 544 (Ohio 2001); *Roman*, 2002 WL 31732468, at *5; *Cuyahoga Cnty. Cmty. College*, 251 N.E.3d at 697–98; s*ee also Student Doe v. Adkins*, 178 N.E.3d 947, 968 (Ohio Ct. App. 2021). Graff may have "known or suspected abuse" based on the Roe texts but

failed to report it. Graff's § 2151.421 liability for this failure extends beyond Charlie Roe to all Coughenour's subsequent sexual abuse victims. *Yates*, 808 N.E.2d at 870–71, *abrogated on other grounds by Adkins*, 178 N.E.3d at 965–68. Thus, at least for now, the (A)(6)(c) exception may also lift Graff's political subdivision immunity.

Because either the (A)(6)(b) or (A)(6)(c) exception might rid Graff of political subdivision immunity, her immunity does not entitle her to summary judgment on Doe's state-law claims. The Court now proceeds to their merits, starting with IIED.

### 2. On the IIED merits, a reasonable jury could find that Graff's failure to investigate Coughenour was "outrageous."

To establish a IIED claim under Ohio law, a plaintiff must prove:

(1) the defendant intended to cause, or knew or should have known that his actions would result in serious emotional distress;

(2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community;

(3) the defendant's actions proximately caused psychological injury to the plaintiff; and

(4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure.

*Woods v. Sharkin*, 192 N.E.3d 1174, 1200 (Ohio Ct. App. 2022) (cleaned up).

Doe presents enough evidence on all these elements. Ohio court have cleared IIED claims based on similar evidence. *See Roman*, 2002 WL 31732468, at *6 (summary judgment); *cf. Cuyahoga Cnty. Cmty. Coll.*, 251

N.E.3d at 696–700 (motion to dismiss). In *Roman* (as here), a teacher sexually

assaulted a plaintiff-student after the principal received reports about the

teacher's sexual misbehavior with a different student. 2002 WL 31732468, at *1–

2. And, as here, the principal in *Roman* conducted a paltry investigation: he

asked the teacher and non-plaintiff-student about the reports, they denied them,

and the principal let it go. *Id.* Based on his paltry investigation, the plaintiff

brought an IIED claim against the principal. *Id.* at *5–6. Although the trial court

granted summary judgment to the principal on the IIED claim, the court of

appeals reversed, reasoning:

> Given [the principal's] position as principal, with a duty to look out for
> the welfare of the students, the fact that he simply accepted the
> parties' denials without conducting further investigation or notifying
> the school social worker could be deemed as 'outrageous conduct.'

*Id.* at 5. Essentially the same goes here: simply assuming that Coughenour was

not grooming other students and would not do so again could be deemed as

"outrageous conduct." The Court accordingly **DENIES** Graff's motion for

summary judgment on Doe's IIED claim.

### 3. On the negligence merits, a reasonable jury could find that Graff had a "duty" to prevent Coughenour's "foreseeable" sexual harassment of another student.

To prevail on his negligence claim, Doe must establish four basic

elements: duty, breach, proximate cause, and damages. *Abrams v. Worthington*,

861 N.E.2d 920, 923 (10th Dist. 2006). Graff contests "duty" but remains silent

about the other elements. Mot. 20, ECF No. 40 at PAGEID # 647.

Whether Graff owes Doe a "duty" depends on the foreseeability of the plaintiff's injury. *Evans v. Ohio State Univ.*, 680 N.E.2d 161, 171 (Ohio Ct. App. 1996). A plaintiff's injury is foreseeable if a defendant knew or should have known that their act or omission was likely to harm someone like the plaintiff. *Mudrich v. Standard Oil Co.*, 90 N.E.2d 859, 863 (Ohio 1950).

Gesturing at Coughenour's lack of criminal history and the lack of evidence that he ever touched other students, Graff argues that Doe's injury was unforeseeable.

The Court disagrees, along lines nearly identical to those it has drawn several times above: a reasonable jury could find that Graff should have known her failure to investigate Coughenour for the Roe texts would likely lead to Coughenour grooming another student. Ohio courts have denied factually similar negligence claims on this same logic. *See Roman*, 2002 WL 31732468, at *6; *Simpkins v. Grace Brethren Church of Delaware*, 16 N.E.3d 687, 699–700 (Ohio Ct. App. 2014). The Court accordingly **DENIES** Graff's motion for summary judgment on Doe's negligence claim.

## V.  CONCLUSION

Though it takes various doctrinal shapes above ("actual notice"; "deliberate indifference"; "recklessness"; "outrageousness"; "duty"), this case boils down to one fundamental point: Graff's failure to investigate Coughenour after learning of the Roe texts subjects her and the Board to liability for Coughenour's later harassment of Doe.  A reasonable jury could hold the Board liable for that failure under Title IX, and it could hold Graff liable under IIED or negligence.  But it could not hold Graff liable under § 1983, seeing how Graff's omissions are not "active unconstitutional conduct."

The Court accordingly:

- **DENIES** the Board's motion for summary judgment on Doe's Title IX claim,

- **DENIES** Graff's motion for summary judgment on Doe's state-law claims,

- **GRANTS** Defendants' motion for summary judgment on Doe's § 1983 claim against Graff,

- **GRANTS** Defendants' uncontested motion for summary judgment on Doe's § 1983 claim against the Board,

- **GRANTS** Defendants' uncontested motion for summary judgment on Doe's state-law claim against the Board,

- **GRANTS** Doe's uncontested motion on the Board's federal funding for Title IX, and

- **DENIES** Doe's motion for summary judgment on actual notice and deliberate indifference.

To recap, Doe's Title IX claim against the Board, IIED claim against Graff, and negligence claim against Graff survive summary judgment.

The parties **SHALL** mediate the remaining claims before trial.  Should the parties wish the Undersigned or a member of his staff to perform the mediation, they shall file a joint notice to that effect.  The parties may also ask the Court to assign a volunteer mediator to the case, or they may retain a private mediator at their own expense.  The Court will set a trial date, if necessary, after the parties try to mediate.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**